Jorge **RODRIGUEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 01–87–00296–CR, 01–87–00297–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

March 3, 1988.

Janet Seymour Morrow, Houston, for appellant.

John B. Holmes, Dist. Atty., for appellee.

Before DUGGAN, WARREN and LEVY, JJ.

## OPINION

DUGGAN, Justice.

After a joint jury trial with two co-defendants, appellant was found guilty of two separate offenses of aggravated kidnapping. The jury assessed punishment upon each conviction at confinement for 99 years and a $10,000 fine. Appellant has requested that the two appeals be consolidated and considered together. He asserts five points of error.

On June 14, 1986, Mr. & Mrs. David Cummings were at their ranch in Kerrville, Texas. Their teenage son, Jason Flintoft, was at their home in Houston with the housekeeper, Jovita Rangel. At approximately 7:30 a.m., appellant, Jorge Rodriguez, and his two co-defendants, Jose Villanueva and Rene Dorantes, allegedly forced their way into the home and abducted the complainants, Jason and Jovita. The two were bound at their hands and feet, blindfolded, and put into the back of a vehicle. They were moved to different locations and kept blindfolded throughout the entire ordeal.

At 10:00 that evening, following numerous phone calls and negotiations throughout the day, Mr. Cummings delivered a cash ransom of $300,000 to a designated location. Officers saw Dorantes retrieve the money and followed him to a house on Greenville Avenue. Shortly thereafter, officers saw a pickup truck leave the house. After they followed the vehicle outside the city on Highway 59 for approximately 40 miles, they stopped it. They found Do-

rantes behind the wheel and appellant in the front passenger seat. There were other people in the back of the vehicle. Approximately $190,000 was recovered from the vehicle, the appellant, and another passenger.

Dorantes told the officers that Jason and Jovita were being held at the house on Greenville Avenue. In the early morning hours, a Houston Police Department S.W.A.T. team entered the house and rescued the complainants. Villanueva and another man were arrested. Another $7,600 was found at the house. Over $96,000 was never recovered.

In his first point of error, appellant asserts that the trial court erred in instructing the jury during the punishment phase that aggravated kidnapping was a first degree felony. Appellant contends that the trial court should have given the jury an instruction on mitigation.

Tex.Penal Code Ann. sec. 20.04(b) (Vernon 1974) defines aggravated kidnapping as a first degree felony, unless the actor voluntarily releases the victim alive and in a safe place, in which event it is a felony of the second degree.

Proof of such a release is in mitigation of punishment. *Butler v. State*, 645 S.W.2d 820, 823 (Tex.Crim.App.1983); *Smith v. State*, 541 S.W.2d 831, 838 (Tex.Crim.App. 1976). When evidence raises a defensive issue or raises an issue that a lesser included offense may have been committed, and a jury charge on the issue is properly requested, the issue must be submitted to the jury. *Moore v. State*, 574 S.W.2d 122, 124 (Tex.Crim.App.1978). Appellant admits that he did not request an instruction on mitigation or object to the charge that was given, but argues that the evidence supported a mitigation charge, and that the failure to submit it was fundamental error.

■ A review of the record reveals that the evidence did not support the issue of voluntary release. Two members of the S.W.A.T. team testified that they rescued the complainants from the house on Green-

ville Avenue. They stated that the complainants were still bound and blindfolded, and that they were being guarded by Villanueva and another man. Both complainants testified that they were not released, but were rescued by the S.W.A.T. team.

Appellant urges that there was considerable evidence of a consistent plan to release the complainants unharmed, near a phone booth, early on the morning of June 15, 1986. He argues that, but for the police rescue action, which was prompted by his co-defendant's voluntary statement regarding the whereabouts of the complainants, the release plan would have been carried out.

However, the above is, arguably, only evidence of an intent to release. The fact remains that the complainants were not "released" within the statutory meaning of the provision.

Additionally, appellant argues that his co-defendant's voluntary information regarding the location of the complainants and the fact that the guards were unarmed constituted a "constructive release." We disagree. There was still the possibility that the complainants could be harmed in a rescue action; therefore, they had not been released alive and in a "safe" place, as required by the statute.

Furthermore, we reject appellant's contention that the evidence raised a fact issue regarding release that the jury should have been allowed to determine. The State conclusively established that the complainants were not released. There was no evidence to support the submission of an instruction on mitigation, and the trial court did not err in instructing the jury that aggravated kidnapping was a first degree felony. Appellant's first point of error is overruled.

In his second and third points of error, appellant asserts that the trial court erred in instructing the jury on the parole law, pursuant to Tex.Code Crim.P.Ann. art. 37.-07, sec. 4 (Vernon Supp.1988). Appellant contends that the "parole charge" violates the "separation of powers" doctrine and

the "due course of law" provision of the Texas Constitution.

The Court of Criminal Appeals has held that article 37.07, sec. 4, is unconstitutional and that it violates the "due course of law" provision of the Texas Constitution. *Rose v. State,* —— S.W.2d —— No. 193–87 (Tex. Crim.App., Nov. 12, 1987) (not yet reported). However, it found that charging the jury on the parole law is not automatically reversible error. Therefore, we apply the *Almanza* standard of review to determine the degree of harm. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on reh'g).

Under *Almanza,* if there was no objection to the court's charge, as in the instant case, then the appellant must show that the error was fundamental, i.e., that it was so egregious and created such harm that he did not receive a fair and impartial trial. *Almanza v. State,* 686 S.W.2d at 171.

The actual degree of harm must be determined in light of the entire jury charge, the voir dire, the state of the evidence, the argument of counsel, and any other relevant information contained in the record. *Id.*

In the instant case, there was no discussion of the law of parole or good conduct credit during the voir dire, and appellant has not challenged the sufficiency of the evidence to support his conviction. At the punishment stage, the State introduced evidence of appellant's prior conviction for the unauthorized use of a motor vehicle. No mention of the law of parole or good conduct credit occurred during jury argument, and an examination of the court's charge does not reveal anything that would have prevented appellant from receiving a fair and impartial trial. The jury was instructed that the punishment range for aggravated kidnapping was confinement for life or for any term of not more than 99 years or less than 5 years, and a fine not to exceed $10,000. In light of the above facts and the severity of the offense, we find that appellant did not suf-

fer any egregious harm from the parole law charge, despite the assessment of punishment at 99 years and a fine of $10,000.

Finally, appellant asserts that article 37.-07, sec. 4 is vague and misleading. This Court has held that it is not. *Clark v. State,* 721 S.W.2d 424, 426 (Tex.App.—Houston [1st Dist.] 1986, pet. granted).

Appellant's second and third points of error are overruled.

In his fourth point of error, appellant asserts that the trial court erred in refusing his requested charge on the lesser included offense of false imprisonment.

A charge on a lesser included offense is required when: 1) the lesser included offense is included within the proof necessary to establish the offense charged, and 2) there is some evidence in the record that if the accused is guilty, he is guilty only of the lesser offense. *Bell v. State,* 693 S.W. 2d 434, 439 (Tex.Crim.App.1985); *Royster v. State,* 622 S.W.2d 442, 446 (Tex.Crim. App.1981) (op. on reh'g).

Kidnapping is a lesser included offense of aggravated kidnapping, and false imprisonment is, in turn, a lesser included offense of kidnapping. *Ex parte Gutierrez,* 600 S.W.2d 933, 935 (Tex.Crim.App.1980). A person commits the offense of kidnapping if he intentionally or knowingly "abducts" another person. Tex.Penal Code Ann. sec. 20.03 (Vernon 1974).

A person commits the offense of false imprisonment if he intentionally or knowingly "restrains" another person. Tex.Penal Code Ann. sec. 20.02(a) (Vernon 1974).

To "restrain," as used here, means to restrict another's movements without consent, by confining him by the use of force or intimidation, so as to interfere substantially with his liberty. Tex.Penal Code Ann. sec. 20.01(1)(A) (Vernon 1974). To "abduct" means to "restrain" another with the intent to prevent his liberation by secreting or holding him in a place where he is not likely to be found, or by using or threatening the use of deadly force. Tex. Penal Code Ann. sec. 20.01(2)(A), (B) (Vernon 1974).

Appellant contends that there was evidence that if he was guilty, he was guilty only of "restraining" the complainants. Specifically, he points to part of his written statement, which was admitted as follows:

He did not tell me what the deal was until he kidnapped the two persons. I think _____ kidnapped the two persons this morning. I am not sure but I think he kidnapped them from a house in Houston. When he kidnapped them he took them somewhere around Denver Harbor. Today, around noon he came by the 1001 Foundren [sic] and told me to go with him to Greensville [sic]. We then left Foundren [sic] and drove to Greensville [sic]. Also, in the truck with us was a mexican male name, _____. I don't remember his last name. When we arrived at Greensville [sic] we all walked inside the house and into the bedroom to the right. When I walked inside I saw a male and a female who were tied up. I also noticed that their eyes were covered with a bandana. I stayed there with the two persons for approximately one hour while _____ and _____ took off.

When they returned it was around 9:00 p.m. When they got there _____ told me that he had the money. _____ walked inside the house with the money, I then looked at the money and could not believe the money was there. We then drove to 10001 Foundren [sic] apartment #1824 and picked up _____ family. We had decided to go to Mexico City, D.F.

I think we were going to split the money three ways. Each of us would get $100,-000.00. The money would be split between me, _____ and _____ . . . .

■ Appellant argues that the jury could have reasonably concluded from his statement that he was only guilty of "restraining" the complainants. However, his "restraint" of the complainants was in a place where he knew that they were not likely to be found. The photographs introduced at

trial showed that the windows in the house were covered with black curtains, and that furniture blocked all but one of the doorways. There were cushions by the one free doorway where the guard was stationed. Further, there were knives strategically placed on either side of that doorway.

Appellant's statement was evidence from which the jury could have reasonably concluded that he was guilty only of kidnapping, but not from which it could have reasonably concluded that he was guilty only of false imprisonment. The jury was charged on the lesser included offense of kidnapping. The trial court did not err in refusing to give a charge on false imprisonment because there was no evidence to support that issue. Appellant's fourth point of error is overruled.

In his fifth point of error, appellant asserts that the trial court erred in forcing him to delete the names of his co-defendants from his written statement before introducing it in evidence.

At trial, the State introduced part of appellant's written statement. Appellant offered the rest of the statement under the rule of optional completeness. Both co-defendants objected and requested that their names be deleted from the statement. The trial court sustained the objections. The redacted statement was admitted in evidence.

■ Appellant contends on appeal that he was entitled to introduce the remainder of the statement unredacted under the rule of optional completeness. However, it is well established that admission at a joint trial of a defendant's extrajudicial confession implicating a co-defendant violates the co-defendant's constitutional right to confrontation. *Bruton v. U.S.*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Where a constitutional right is in conflict with a valid procedural rule of law, the procedural rule must yield to the superior constitutional right. *Whitmore v. State*, 570 S.W.2d 889, 898 (Tex.Crim.App.1977) (op. on reh'g).

Appellant further asserts that the trial court's order of deletion denied him his constitutional right to present evidence on his own behalf, and that his co-defendants should have requested a separate trial to protect their rights.

■ However, appellant made no such objection at trial. When appellant's counsel sought to introduce the balance of appellant's statement at trial, the co-defendants stated their objections and were granted the relief to which they were entitled, and appellant made no assertion that the deletion of the names would deny him a fair trial.

To the contrary, out of the jury's presence, the court and counsel for all three co-defendants discussed and agreed upon a procedure whereby appellant's counsel would read to the jury, for the benefit of all three defendants, the balance of appellant's statement that was not offered by the State. The reading was done from a duplicated copy of appellant's statement in which the co-defendants' names were "whited out." Appellant's trial counsel stated, in response to the proposed procedure:

[APPELLANT'S COUNSEL]: I don't have any objection. I understand. We are going to get to an end product the jury needs to hear. I don't have any problem with that. If that is the Court's ruling. If the Court orders me to delete—

[THE COURT]: I will sustain their objection.

[APPELLANT'S COUNSEL]:—specific names.

I will delete that at this time. Is that the final copy that will be presented to the jury?

Appellant made no objection at trial that he was harmed by the procedure, or that he was denied the right to present evidence. Neither did he request a severance. Accordingly, we hold that he waived any right to complain on appeal concerning the redaction procedure.

■ Moreover, error, if any, was harmless. The reading of the exhibit as a whole to the jury, excluding the co-defendant's names, in fact conveyed the import of appellant's statement to the jury. There is no reasonable probability that the exclusion of the names of the co-defendants from the statement contributed to appellant's conviction or punishment. Appellant's fifth point of error is overruled.

The judgment of the trial court is affirmed.