TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00429-CR







Derrick Darnell Posey, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO. 44,078, HONORABLE JACK W. PRESCOTT, JUDGE PRESIDING







PER CURIAM


 A jury found appellant, Derrick Posey, and his codefendants, Marvin Clair and
Anthony Hurst, guilty of capital murder committed in the course of a robbery. Act of April 16,
1985, 69th Leg., R.S., ch. 44, § 1, 1985 Tex. Gen. Laws 434 (Tex. Penal Code Ann.
§ 19.03(a)(2), since amended). The State having waived the death penalty, the district court
assessed punishment at imprisonment for life. We will affirm. (1)



1.  Sufficiency of evidence.

 Celester German testified that he spent the evening of September 5 shooting dice
and selling drugs at a Killeen apartment complex that was a well-known drug market. Many other
people were present, including appellant, Clair, and Hurst. Clair was armed with a BB pistol that
was easily mistaken for a .45 caliber semiautomatic firearm. Hurst was carrying a .25 caliber
pistol. German overheard Hurst and Clair saying "they needed some money" and "they were
going to do a robbery." Appellant was not present during this conversation.

 About midnight, Nathaniel Tabron drove to the apartment complex to purchase
cocaine. While Tabron was negotiating in the parking lot with a drug dealer named Red,
appellant and Clair approached Tabron's car. Clair pointed the BB pistol at Tabron's head and
attempted to seize the cash in Tabron's hand. Appellant came to Clair's aid when Tabron resisted. 
As the three men struggled, Hurst walked up and fatally shot Tabron with the .25 caliber pistol.

 Appellant gave two written statements to the police that were admitted in evidence
after being edited to delete references to his codefendants. In the first of these statements,
appellant said:



I then heard [blank] say he was going to get somebody tonight. By that I mean he
was going to jack somebody, by that I mean taking somebody's money or car while
trying to sell some dope . . . . [blank] I did see a gun on him. The gun he had
was in his front waist shorts. The gun was a 45 regular size all black automatic. 
This was the first time I saw this gun. [blank] Afterwards, a dopefiend pulled up
. . . . Red went to the car. Red then came back to where we were and told us that
it was a hundred dollar bite. . . . All of us then started walking to the breezeway
located on the southside of the apartment complex [blank]. Red tried to service the
guy. Red was going back to his car [blank]. That's when I decided to help [blank]
by grabbing the dopefiend's right wrist and twisted it so that he could let go of the
gun, so that [blank] could get the dopefiend's money and for the dopefiend to let
go of the gun. [blank] The gun [blank] used to shoot the guy was a little .25
caliber chrome automatic with a brown handle. . . . I was just trying to help him
finish robbing the dopefiend, not to shoot him. . . . I tried to help [blank] finish
robbing the guy when the dopefiend grabbed [blank] gun.

Appellant's second statement read:



I heard [blank] say that he was going to jack someone. Right after that [blank] and
[blank] walked to a corner by themself [sic]. After their little talk, [blank] said he
was going to jack someone again. When [blank] said this the second time, he still
had the black gun in his shorts.



 The district court charged the jury on the law of parties. Tex. Penal Code Ann.
§§ 7.01, 7.02(a)(2), (b) (West 1994); see Livingston v. State, 542 S.W.2d 655, 660 (Tex. Crim.
App. 1976) (law of parties applies to prosecution for capital murder). Appellant concedes that
there was ample evidence to prove that he was a party to the lesser included offense of aggravated
robbery, but urges that the evidence was legally and factually insufficient to prove that he was a
party to capital murder.

 If, in the attempt to carry out a conspiracy to commit one felony, another felony
is committed by one of the conspirators, all conspirators are guilty of the felony actually
committed, though having no intent to commit it, if the offense was committed in furtherance of
the unlawful purpose and was one that should have been anticipated as a result of carrying out the
conspiracy. Sec. 7.02(b). The key to the existence of a criminal conspiracy is an agreement
between two or more persons to commit a felony. Tex. Penal Code Ann. § 15.02(a)(1) (West
1994). German testified that he heard Clair and Hurst agree to commit a robbery. Appellant
argues, however, that there was no evidence that he agreed to be part of this conspiracy or was
even aware that Clair and Hurst were acting in concert.

 An agreement to engage in a conspiracy may be inferred from the acts of the
parties. Tex. Penal Code Ann. § 15.02(b) (West 1994); see Farrington v. State, 489 S.W.2d 607,
609 (Tex. Crim. App. 1972); Walker v. State, 828 S.W.2d 485, 487 (Tex. App.--Dallas 1982, pet.
ref'd) (agreement may be proved circumstantially). In his statement to the police, appellant
admitted that he knew of the plan to rob a "dopefiend." Later, appellant actively assisted Clair
in the commission of the attempted robbery. Viewing this evidence in the light most favorable
to the verdict, the jury could rationally conclude that appellant conspired with Clair and Hurst to
commit an armed robbery, that Hurst murdered Tabron in furtherance of the conspiracy, and that
the murder was an offense that should have been anticipated as a result of carrying out the
conspiracy. See Jackson v. Virginia, 443 U.S. 307 (1979); Geesa v. State, 820 S.W.2d 154 (Tex.
Crim. App. 1991); Griffin v. State, 614 S.W.2d 155 (Tex. Crim. App. 1981) (test for legal
sufficiency). Considering all the evidence equally, instead of in the light most favorable to the
verdict, the jury's verdict is not so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust. See Orona v. State, 836 S.W.2d 319 (Tex. App.--Austin 1992, no pet.);
Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd as untimely filed) (test
for factual sufficiency); and see Clewis v. State, No. 450-94 (Tex. Crim. App. January 31, 1996)
(adopting Stone test for factual sufficiency).

 The evidence supports the conclusion that Hurst intentionally murdered Tabron in
the course of and as a party to the robbery conspiracy. As a coconspirator, appellant was also
guilty of the murder. Because we find the evidence legally and factually sufficient to sustain
appellant's conviction as a coconspirator, we express no opinion whether the evidence supports
the conviction on the theory that appellant aided Hurst in the commission of capital murder. Sec.
7.02(a)(2). Points of error one and are overruled.



2.  Admission of Clair's statement.

 Clair gave a statement to the police implicating appellant, Hurst, and himself in the
robbery and murder of Nathaniel Tabron. Clair did not testify at trial. Clair's statement to the
police was admitted in evidence after being edited to remove incriminating references to appellant
and Hurst. The court also instructed the jury not to consider Clair's statement as evidence against
appellant or Hurst. The pertinent portion of Clair's statement reads:



I was shooting dice at the King Arms apartments. . . for about 30 minutes. I was
shooting dice with [blank] Red. [blank] Red and I shot dice for about 15-20
minutes, when this blue car pulled up on the other side of the apartments, Red
went over to service the people in the car. . . . I left the breezeway and walked
to rear of the car . . . . Then [blank] walked over to the blue car. I guess he was
trying to get the guy in the car to buy his stuff. I said, "ain't none of you all gettin
his money," and went over to the dumpster where I had thrown the BB gun earlier
and picked it up. I went back to where the blue car was and walked up to the car
from the rear and stopped by the rear drivers side window. I watched what was
going on for a minute and reached with my left hand, to grab the money that the
driver of the blue car had in his left hand, I then put the gun against the drivers
head and said "this is my money". The guy grabbed the gun with his right hand
and wouldn't let go. I struggled with him for about 3 seconds [blank]. The shot
surprised me and I took off running towards my girlfriends apartment. Celester
and I got back there first, then Kool Aid, [blank], and [blank].



In four points of error, appellant contends the district court erred by overruling his motion to
suppress Clair's statement in its entirety and by admitting in evidence the redacted version.

 Appellant first contends that Clair's statement should have been suppressed because
it was involuntary. Appellant's motion to suppress the statement was based solely on appellant's
constitutional right of confrontation. U.S. Const. amend. VI; Tex. Const. art. I, § 10. The
motion did not complain that Clair's statement was involuntary and appellant's brief does not refer
us to any place in the record where he objected to Clair's statement on that ground.

 Clair did move to suppress his statement as involuntary. In support of the motion,
Clair testified outside the jury's presence that he gave his statement only after numerous threats
and promises were made by the interrogating officers. The officers, who also testified, denied
making any threats or promises. The district court was the sole trier of fact regarding Clair's
motion to suppress and this Court may not disturb any finding that is supported by the record. 
Green v. State, 615 S.W.2d 700, 707 (Tex. Crim. App. 1980). Because the officers' testimony
supports the district court's conclusion that Clair gave his statement voluntarily, point of error
three is overruled. (2)

 Appellant next urges that the admission of Clair's statement violated his
constitutional right to confront the witnesses against him. (3) An accomplice's statement implicating
the accused in the accomplice's criminal conduct is inherently unreliable. This unreliability is
compounded when the alleged accomplice does not testify and cannot be tested by cross-examination. The Supreme Court has therefore determined that a criminal defendant's
confrontation right is violated by the admission in evidence of a confession given by his
nontestifying codefendant that incriminates both defendants. Bruton v. United States, 391 U.S.
123, 135-37 (1968); see Pointer v. Texas, 380 U.S. 400, 403 (1965) (Fourteenth Amendment
incorporates confrontation right). The Confrontation Clause is not violated, however, if the
nontestifying codefendant's confession is edited to eliminate any reference to the other defendant
and the jury is instructed not to consider the codefendant's confession in determining the other
defendant's guilt. Richardson v. Marsh, 481 U.S. 200, 211 (1987); McMahon v. State, 582
S.W.2d 786, 793 (Tex. Crim. App. 1978); Proctor v. State, 871 S.W.2d 225, 230 (Tex.
App.--Eastland 1993, pet. granted).

 Appellant argues that Clair's statement tended to incriminate him even after
redaction and therefore its admission violated the Bruton rule. Appellant argues that from the
manner in which the statement was edited, which left blank spaces in the exhibit, and from the
objections to its admission voiced by himself and Hurst, the jury could readily infer that the
deleted portions of the statement referred to appellant and Hurst. In Marsh, however, the
Supreme Court held that the Bruton rule applies only to a confession that expressly incriminates
another defendant. If the confession incriminates another defendant only by inference, a proper
limiting instruction is sufficient to avoid a Sixth Amendment violation. Marsh, 481 U.S. at 208-09. Because Clair's statement, after redaction, did not expressly refer to or incriminate appellant
and because a proper limiting instruction was given, the admission of Clair's statement did not
violate Bruton. Points of error five and six are overruled.

 Appellant further contends that Clair's statement was inadmissible hearsay. As
previously discussed, however, the statement was edited to remove all incriminating references
to appellant and the jury was instructed not to consider Clair's statement as evidence against
appellant. Clair's statement was offered and admitted solely as evidence against Clair and, as
such, was not hearsay. Tex. R. Crim. Evid. 801(e)(2)(A). Point of error four is overruled.



3.  Admission of appellant's statement.

 After his two statements to the police, edited to omit references to Clair and Hurst,
were admitted in evidence, appellant moved for admission of each statement in its entirety, citing
the rule of optional completeness. Tex. R. Crim. Evid. 107. Clair and Hurst objected, citing
their constitutional confrontation rights as discussed in Bruton. In two points of error, appellant
contends the district court erred by overruling his requests for admission of his complete, unedited
statements.

 Under the rule of optional completeness, when part of a writing is offered in
evidence by a party, the whole of the writing may be inquired into by the other party. Rule 107. 
The purpose of the rule is to guard against the possibility of confusion, distortion, or false
impression arising from the use of part of a writing out of context. Pinkney v. State, 848 S.W.2d
363, 366 (Tex. App.--Houston [1st Dist.] 1993, no pet.). If the State places in evidence only part
of a defendant's confession, the defendant may as a general rule introduce the deleted parts of the
confession. Reece v. State, 772 S.W.2d 198, 203 (Tex. App.--Houston [14th Dist.] 1989, no
pet.). In this cause, however, appellant's right to optional completeness conflicted with his
codefendants' constitutional right to confront the witnesses against them. When the rule of
optional completeness conflicts with a codefendant's confrontation right, the superior
constitutional right must prevail. Finley v. State, 917 S.W.2d 122, 126 (Tex. App.--Austin 1996,
pet. filed; Rodriguez v. State, 746 S.W.2d 927, 932 (Tex. App.--Houston [1st Dist.]), rev'd on
other grounds, 753 S.W.2d 161 (Tex. Crim. App. 1988); Tex. R. Crim. Evid. 101(c).

 Appellant argues that parts of the redacted material were exculpatory as to him and
that, as to these parts of his statements, the rule of optional completeness should have prevailed
over his codefendants' confrontation rights. Appellant did not make this argument at trial. 
Appellant sought the admission of his statements in their entirety, not just those parts he now
claims are exculpatory. Having failed to present this contention to the trial court, appellant did
not preserve it for appeal. Finley, 917 S.W.2d at 126; Tex. R. App. P. 52(a).

 We have examined the allegedly exculpatory passages and conclude that, contrary
to appellant's contention, they are not inconsistent with the conclusion that he was part of a
robbery conspiracy. At the same time, the redacted passages unquestionably incriminated
appellant's codefendants because they described Clair's and Hurst's involvement in the robbery
and murder. The district court did not err by giving priority to the codefendants' confrontation
rights and by refusing appellant's request that his statements be admitted unedited. Points of error
seven and eight are overruled.



4.  Prosecutorial argument.

 During his closing arguments at the guilt stage, the prosecutor defended the
credibility of State's witness Celester German as follows:



 If they had a witness out there who said he's a known liar and can't tell the
truth, they would put him on the stand. Not one single witness is called after
months and months of preparation by this army of defense lawyers. These
purveyors of reasonable doubt, not one single witness have they subpoenaed to put
on this stand to refute this evidence and they have an obligation legally, morally
in every way to put them on if they've got somebody that can help these men that
are accused. But you've got a goose egg from the defense, folks.



No objection was voiced to this argument. Later in his argument, the prosecutor said:



 And I'll tell you what too, when the evidence is this overwhelming, you've
got eye witnesses to this killing, they don't have any choice but to get up here and
say yes, my guy did at least this, but you better understand when they're doing --
they're saying -- because what they're really not saying is you give me the best
deal possible because they're shopping for the best deal possible and I don't care
if I ever convince a defense lawyer in my life about anything, I'm not paid to
convince them, I'll take my chances with 12 honest people any day to convince you
unanimously of their guilt before -- I'll die before I convince a defense lawyer that
it's daylight when it is. But I'll take 12 fair, honest people any day.


 And when you look at this, if you think that we've overcharged this case,
then give them the good deal that their lawyers ask for. Give them what -- what
is -- if you want the kind of society that is -- that is ruled by the weakest most
apologetic lowest common denominator, then start giving defense lawyers what
they say we're at least guilty of. Because what they're not saying is God, I hope
you give me that deal. I hope you give me murder on behalf of Mr. Hurst and I
hope you give me ag robbery on behalf of the two others, but believe me they'll
turn cart wheels out of here they'll be so gleeful and happy.



Again, no objection was made by the defense. Finally, the prosecutor responded to defense
counsel's question why another witness to the shooting was not called to testify:


 Ask why didn't we call Christopher Turner. I loved that, I love that. Why
didn't you all call Christopher Turner, defense attorneys? Why didn't you all? 
We'd be here from now on. Me and him, Kimball [co-prosecutor] would have a
fist fight to get to see who could cross-examine Christopher Turner. Not one of
those defense lawyers called him so he obviously would be no help to them.



As before, there was no objection to this argument.

 Appellant contends the prosecutor's last quoted remark improperly shifted the
burden of proof. This contention was not preserved for review. Tex. R. App. P. 52(a). In any
case, pointing out that an available witness could have been called by the defense does not shift
the burden of proof to the accused. Point of error nine is overruled.

 Appellant also complains that the prosecutor, in his quoted remarks, improperly
attacked defense counsel. Allegations of misconduct by defense counsel have no place in a
prosecutor's argument. Gomez v. State, 704 S.W.2d 770, 771-72 (Tex. Crim. App. 1985). We
do not believe, however, that the prosecutor's remarks in this cause, if error, were so
inflammatory or unfairly prejudicial as to have been incurable by an instruction to disregard. 
Accordingly, appellant waived the asserted error by failing to object. Tex. R. App. P. 52(a). 
Point of error ten is overruled.

 The judgment of conviction is affirmed.


Before Justices Powers, Jones and B. A. Smith

Affirmed

Filed: July 17, 1996

Do Not Publish 

1.   Hurst's conviction was affirmed by this Court in Hurst v. State, No. 3-94-428-CR (Tex.
App.--Austin May 17, 1995, pet. ref'd) (not designated for publication). We affirm Clair's
conviction in an opinion delivered today. Clair v. State, No. 3-94-430-CR (Tex. App.--Austin
July 17, 1996, no pet. hist.) (not designated for publication).
2.   Appellant also briefly argues under this point of error that the admission of Clair's
statement violated his right of confrontation. We consider and overrule this contention in
our discussion of appellant's fifth and sixth points of error. 
3.   Appellant cites both the United States and Texas constitutions. Appellant does not
contend, however, that our state constitution's confrontation guarantee is any broader than
that contained in the federal constitution.


in his argument, the prosecutor said:



 And I'll tell you what too, when the evidence is this overwhelming, you've
got eye witnesses to this killing, they don't have any choice but to get up here and
say yes, my guy did at least this, but you better understand when they're doing --
they're saying -- because what they're really not saying is you give me the best
deal possible because they're shopping for the best deal possible and I don't care
if I ever convince a defense lawyer in my life about anything, I'm not paid to
convince them, I'll take my chances with 12 honest people any day to convince you
unanimously of their guilt before -- I'll die before I convince a defense lawyer that
it's daylight when it is. But I'll take 12 fair, honest people any day.


 And when you look at this, if you think that we've overcharged this case,
then give them the good deal that their lawyers ask for. Give them what -- what
is -- if you want the kind of society that is -- that is ruled by the weakest most
apologetic lowest common denominator, then start giving defense lawyers what
they say we're at least guilty of. Because what they're not saying is God, I hope
you give me that deal. I hope you give me murder on behalf of Mr. Hurst and I
hope you give me ag robbery on behalf of the two others, but believe me they'll
turn cart wheels out of here they'll be so gleeful and happy.



Again, no objection was made by the defense. Finally, the prosecutor responded to defense
counsel's question why another witness to the shooting was not called to testify:


 Ask why didn't we call Christopher Turner. I loved that, I love that. Why
didn't you all call Christopher Turner, defense attorneys? Why didn't you all? 
We'd be here from now on. Me and him, Kimball [co-prosecutor] would have a
fist fight to get to see who could cross-examine Christopher Turner. Not one of
those defense lawyers called him so he obviously would be no help to them.



As before, there was no objection to this argument.

 Appellant contends the prosecutor's last quoted remark improperly shifted the
burden of proof. This contention was not preserved for review. Tex. R. App. P. 52(a). In any
case, pointing out that an available witness could have been called by the defense does not shift
the burden of proof to the accused. Point of error nine is overruled.

 Appellant also complains that the prosecutor, in his quoted remarks, improperly
attacked defense counsel. Allegations of misconduct by defense counsel have no place in a
prosecutor's argument. Gomez v. State, 704 S.W.2d 770, 771-72 (Tex. Crim. App. 1985). We
do not believe, however, that the prosecutor's remarks in this cause, if error, were so
inflammatory or unfairly prejudicial as to have been incurable by an instruction to disregard. 
Accordingly, appellant waived the asserted error by failing to object. Tex. R. App. P. 52(a). 
Point of error ten is overruled.

 The judgment of conviction is affirmed.


Before Justices Powers, Jones and B. A. Smith

Affirmed

Filed: July 17, 1996

Do Not Publish 

1.   Hurst's conviction was affirmed by this Court in Hurst v. State, No. 3-94-428-CR (Tex.
App.--Austin May 17, 1995, pet. ref'd) (not designated for publication). We affirm Clair's
conviction in an opinion delivered today. Clair v. State, No. 3-94-430-CR (Tex. App.--Austin
July 17, 1996, no pet. hist.) (not designated for publication).
2.   Appellant also briefly argues under this point of error that the admission of Clair'